**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LawHQ, LLC, and Thomas Alvord, | |
| *Plaintiffs,* | Case No. _____ |
| v. | |
| Jorge Dopico, in his official capacity as Chief Attorney for the Departmental Disciplinary Committee for the Appellate Division of the New York Supreme Court, First Judicial Department; | **COMPLAINT** |
| Diana Maxfield Kearse, in her official capacity as Chief Counsel for the Grievance Committees for the Second, Eleventh, and Thirteenth Judicial Districts of the Second Judicial Department; | |
| Gary L. Casella, in his official capacity as Chief Counsel for the Grievance Committee for the Ninth Judicial District of the Second Judicial Department; | |
| Catherine A. Sheridan, in her official capacity as Chief Counsel for the Grievance Committee for the Tenth Judicial District of the Second Judicial Department; | |
| Monica A. Duffy, in her official capacity as Chief Attorney for the Attorney Grievance Committee for the Third Judicial Department; | |
| Mary E. Gasparini, in her official capacity as Principal Counsel for the Attorney Grievance Committee for the Fifth Judicial District of the Fourth Judicial Department; | |
| Dom Cambareri, in his official capacity as Principal Counsel for the Attorney Grievance Committee for the Fifth Judicial District of the Fourth Judicial Department; | |

1

DANIEL A. DRAKE, in his official capacity as
Principal Counsel for the Attorney Grievance
Committee for the Seventh Judicial District of
the Fourth Judicial Department;

ANDREA E. TOMAINO, in her official capacity
as Principal Counsel for the Attorney
Grievance Committee for the Seventh Judicial
District of the Fourth Judicial Department;

MARGARET C. CALLANAN, in her official
capacity as Principal Counsel for the Attorney
Grievance Committee for the Eighth Judicial
District of the Fourth Judicial Department;

CYDNEY A. KELLY, in her official capacity as
Principal Counsel for the Attorney Grievance
Committee for the Eighth Judicial District of
the Fourth Judicial Department;

*Defendants.*

## INTRODUCTION

1. This is a First Amendment challenge to New York Rule of Professional Conduct 7.5(b), which prohibits law firms from advertising their services using trade names. New York stands apart from almost every other state in forbidding the practice. The rule is a holdover from professionalism standards drafted in the early twentieth century, when courts did not yet recognize commercial speech as a form of protected expression and when almost all forms of lawyer advertising were forbidden. Although most states have since modernized their ethics rules to conform to U.S. Supreme Court precedent and contemporary marketing practice, New York continues to limit firm names to the names of the firm's partners.

2. New York's trade-name ban serves no valid purpose. Nobody could claim that consumers would be better protected if trade names were prohibited in other industries—if the law required Facebook, for example, to be called Mark Zuckerberg & Associates or Apple to be called Jobs & Wozniak. Law firms are no different. On the contrary, prohibiting firms from using trade names, if anything, makes their names *more* misleading by replacing memorable and easily

distinguishable firm names with the names of partners who are often retired, deceased, or unlicensed in the state. Because Rule 7.5(b) restricts commercial speech without advancing any legitimate state interest, the plaintiffs seek a declaration that it violates the First Amendment of the U.S. Constitution and an injunction preventing disciplinary counsel in New York from enforcing it.

**JURISDICTION**

3.   The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

**PARTIES**

4.   Plaintiff LawHQ, LLC is a law firm based in Salt Lake City, Utah, that focuses on protecting consumers from the proliferation of telephone spam under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. The firm employs locally admitted lawyers outside of Utah to provide legal services in other states. Although it intends to expand its services to New York within the next few months, it cannot currently practice there because New York Rule of Professional Conduct 7.5(b) prohibits it from operating under its trade name in the state.

5.   Plaintiff Thomas Alvord is a lawyer and the founder of LawHQ. He is a citizen of Utah and is admitted to practice law there.

6.   Defendants are chief disciplinary counsel for each department of the Appellate Division of the New York Supreme Court. Collectively, they are responsible for investigating and prosecuting alleged violations of the New York Rules of Professional Conduct throughout the state.

   a.   Defendant Jorge Dopico is Chief Attorney for the Departmental Disciplinary Committee in the First Judicial Department.

   b.   Defendants Diana Maxfield Kearse, Gary L. Casella, and Catherine A. Sheridan are Chief Counsel for the Grievance Committees in the Second Judicial Department.

   c.   Defendant Monica A. Duffy is Chief Attorney for the Attorney Grievance Committee in the Third Judicial Department.

d.      Defendants Mary E. Gasparini, Dom Cambareri, Daniel A. Drake, Andrea

E. Tomaino, Margaret C. Callanan, and Cydney A. Kelly are Principal Counsel for the

Attorney Grievance Committees in the Fourth Judicial Department.

**CHALLENGED RULE**

7.    The New York Rules of Professional Conduct provide in relevant part:

> *A lawyer in private practice shall not practice under a trade name*, a name that
> is misleading as to the identity of the lawyer or lawyers practicing under such
> name, *or a firm name containing names other than those of one or more of the
> lawyers in the firm*, except that the name of a professional corporation shall
> contain "PC" or such symbols permitted by law, the name of a limited liability
> company or partnership shall contain "LLC," "LLP" or such symbols
> permitted by law and, if otherwise lawful, a firm may use as, or continue to
> include in its name the name or names of one or more deceased or retired
> members of the firm or of a predecessor firm in a continuing line of
> succession. …

N.Y. Rules of Prof'l Conduct R. 7.5(b) (emphasis added).

**FACTUAL ALLEGATIONS**

8.    A state may restrict commercial speech, including lawyer advertising, only in response

to evidence that the restriction is necessary to remedy an important problem, and then only when

the restriction is "a last—not first—resort." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373

(2002). The state needs actual evidence, not "mere speculation and conjecture," "that the harms it

recites are real and that its restrictions will in fact alleviate them to a material degree." *Edenfield

v. Fane*, 507 U.S. 761, 770–71 (1993). In adopting New York Rule of Professional Conduct 7.5(b),

which prohibits law firms from advertising using trade names, New York did not even attempt to

satisfy that burden. The rule arose not from an evidentiary record demonstrating an important

need, but from antiquated rules of professionalism that once prohibited virtually all lawyer

advertising and that are now universally understood to violate the First Amendment.

**The American Bar Association adopts the Canons of Professional Ethics**
**in the early twentieth century to prohibit nearly all forms**
**of lawyer advertising, including law-firm trade names.**

9.    More than a century ago, the American Bar Association (ABA) adopted the Canons of Professional Ethics as the first national rules governing the professional conduct of lawyers. The canons deemed lawyer advertising as a whole to be "unprofessional" and "intolerable." ABA Canons of Prof'l Ethics, Canon 27 (1908). Accordingly, they prohibited nearly all forms of such advertising beyond "simple business cards." *See id.* They did not, however, specifically restrict the names under which law firms could advertise their services. *Id.*

10.   Two decades later, an ABA committee proposed the addition of a new rule governing law-firm names. *See Report of the Special Committee*, 53 ABA Rep. 372, 379 (1927). In its initial proposed form, the rule prohibited "misleading use of [a] partnership name," including "use in the firm name [of] the name of a person not authorized to practice where it is used." *Id.* By the time the ABA adopted the rule the following year, however, the committee had added a new prohibition providing that "[n]o false or assumed *or trade name* should be used to disguise the practitioner or his partnership." *Report of the Special Committee*, 52 ABA Rep. 495, 496 (1928) (emphasis added). The ABA later deleted the proposed rule's limitation to cases where a trade name is "used to disguise the practitioner or his partnership"—creating for the first time a total ban on law-firm trade names. *See Report of the Special Committee on Supplements to the Canons of Professional* Ethics, 52 ABA Rep. 764-765 (1937).

11.   In its final form, Canon 33 provided that, in "the selection and use of a firm name, no false, misleading, assumed or trade name should be used." *Canons of Prof'l Ethics*, Canon 33 (1937). At the same time, however, the rule continued to allow one kind of trade name by expressly permitting the "use of the name of a deceased or former partner," though it cautioned that "care should be taken that no imposition or deception is practiced through this use." *Id.* The rule also loosened its initial restriction on including the names of lawyers not licensed in the jurisdiction, providing only that "care should be taken to avoid any misleading name or

representation which would create a false impression as to the professional position or privileges of the member not locally admitted." *Id.*

12.    No evidence suggests that the ABA adopted the advertising restrictions in the canons to protect consumers of legal services. In adopting Canon 33 and its amendments, neither the ABA's drafting committee nor its House of Delegates cited evidence that any consumer had ever been confused or misled by a trade name. Nor did they suggest any other reason for the prohibition. Ethics opinions by the ABA and New York bar associations applied Canon 33 to prohibit law firms from using trade names such as "McCarrus Claim Service" and "Northern Law Clinic," which posed no credible threat of deception. *See* ABA Formal Op. 318 (1967).

13.    Although the ABA did not state its reasons for restricting trade names or other forms of advertising, it most likely adopted the restrictions to "limit entry into the profession and restrict trade" in response to a large influx of new lawyers and new forms of competition in the early twentieth century. *See* ABA, *Laywer Advertising at the Crossroads* 33 (1995). At that time, the only permissible way of organizing a law firm was as a partnership, and the practice of law across state lines was rare. *See* ABA Formal Op. 318 (1967). The canons' prohibitions on advertising answered the concern of bar leaders that the rapidly changing legal profession "was being reduced to a trade" and that commercialization was "at least partially responsible." Linda Sorenson Ewald, *Content Regulation of Lawyer Advertising: An Era of Change*, 3 Geo. J. Legal Ethics 429, 431 (1990).

14.    Nearly every state, including New York, adopted the canons, setting off a decades-long period in which lawyer advertising in the United States—including law-firm trade names—was almost completely prohibited.

### The ABA carries on the trade-name ban by incorporating it into the Model Code of Professional Responsibility.

15.    In 1969, the ABA adopted the Model Code of Professional Responsibility to supersede the Canons of Professional Ethics. *See Report of the Special Committee*, 94 ABA Rep. 729, 729 (1969). The Model Code was divided into "ethical considerations," which were designed to be

"aspirational," and "disciplinary rules," which were "mandatory in character" and could serve as the basis for discipline. *Id.* at 731–32.

16.    One of the ABA's reasons for replacing the canons was the "[c]hanged and changing conditions in our legal system and urbanized society." *Id.* at 729. With the Model Code, the ABA sought to "pass beyond the petty details of form and manners" reflected in the canons, which the drafters viewed as mostly "generalizations designed for an earlier era." *Id.* at 730 (quoting Harlan F. Stone, *The Public Influence of the Bar*, 48 Harv. L. Rev. 1, 10 (1934)).

17.    Despite that goal, the Model Code retained the canons' "traditional ban against advertising by lawyers." *Report of the Special Committee*, 94 ABA Rep. at 739 (EC 2-9). With very limited exceptions, the code's disciplinary rules prohibited a lawyer from using "any form of public communication that contain[ed] professionally self-laudatory statements calculated to attract lay clients" or from otherwise "publiciz[ing] himself" through any "means of commercial publicity." *Id.* at 741 (DR 2-101(A), (B)).

18.    The code's ethical considerations explained the purpose of the advertising ban, asserting that lawyer advertising "could mislead the layman" and "bring about distrust of the law and lawyers." *Id.* at 739 (EC 2-9). In support of those claims, the drafters wrote that self-laudatory advertisements are "reprehensible" because they "'offend the traditions and lower the tone of our profession.'" *Id.* at 748 n.21 (quoting *State v. Nichols*, 151 So.2d 257, 259 (Fla. 1963)).

19.    Among numerous other restrictions on particular forms of lawyer advertising, the Model Code incorporated the canons' prohibition on law-firm trade names. The code's disciplinary rules, citing Canon 33 as authority, provided that a "lawyer in private practice shall not practice under a trade name, a name that is misleading as to the identity of the lawyer or lawyers practicing under such name, or a firm name containing names other than those of one or more of the lawyers in the firm." *Id.* at 743 (DR 2-102(B)) & 753 n.108.

20.    The Model Code asserted, in its ethical considerations, that the trade-name ban was necessary because "[t]he use of a trade name or an assumed name could mislead laymen concerning the identity, responsibility, and status of those practicing thereunder." *Id.* at 743 (EC

2-11). But the drafters did not explain how anyone could be misled by an ordinary trade name or cite any evidence supporting their assertion.

21.    Like the canons, the Model Code continued to allow law-firm names to include "the name or names of one or more deceased or retired members of the firm." *Id.* at 743 (DR 2-102(B)). The drafters explained that the "reason for this is that all of the partners have by their joint and several efforts over a period of years contributed to the good will attached to the firm name." *Id.* at 749 n.31 (quoting ABA Formal Op. 267 (1945)). "In the case of a firm having widespread connections," they wrote, a "change in firm name … reflects a loss in some degree of the good will to the building up of which the surviving partners have contributed their time, skill and labor through a period of years." *Id.* The code also allowed partnerships "among lawyers licensed in different jurisdictions" to use "the same firm name … in each jurisdiction," but required that all other "enumerations of the members and associates of the firm … make clear the jurisdictional limitations on those members and associates of the firm not licensed to practice in all listed jurisdictions." *Id.* at 743 (DR 2-102(D)).

22.    Almost every state adopted some version of the Model Code, including its prohibitions on lawyer advertising and law-firm trade names. In particular, the New York Code of Professional Responsibility included a materially identical version of the Model Code's trade-name ban.

### The U.S. Supreme Court recognizes that commercial speech is entitled to First Amendment protection, ending the long prohibition on lawyer advertising.

23.    Lawyer advertising remained largely prohibited in every state until 1977, when the U.S. Supreme Court declared Arizona's version of the Model Code unconstitutional under the First Amendment. *See Bates v. State Bar of Arizona*, 433 U.S. 350 (1977). By that time, evidence was mounting that the advertising ban had left "a substantial portion of the public … ill-informed about its rights, fearful about going to an attorney, and ignorant concerning how to choose one." *Petition of Felmeister & Isaacs*, 518 A.2d 188, 192 (N.J. 1986). In *Bates*, the Supreme Court

recognized for the first time that the First Amendment protects truthful and non-misleading advertising by lawyers and law firms. *See Bates*, 433 U.S. at 383–84.

24.   The Court in *Bates* rejected Arizona's argument that lawyer advertising would "tarnish the dignified public image of the profession," finding Arizona's "postulated connection between advertising and the erosion of true professionalism to be severely strained." *Id.* at 368. As the Court explained, "[b]ankers and engineers advertise, and yet these professions are not regarded as undignified." *Id.* at 369–70. On the contrary, citing evidence that "[t]he absence of advertising may be seen to reflect the profession's failure to reach out and serve the community," the Court noted that "the fact that [the legal profession] long has publicly eschewed advertising" had likely led to "public disillusionment" and "cynicism with regard to the profession." *Id.* at 370-71. And advertising restrictions, the Court wrote, also isolate lawyers from competition, thus reducing "the incentive to price competitively" and "perpetuat[ing] the market position of established attorneys." *Id.* at 377.

25.   Over the following years, the Supreme Court subjected remaining state restrictions on lawyers' use of common advertising techniques to rigorous and skeptical scrutiny and, for the most part, held the restrictions unconstitutional under the First Amendment. *See, e.g.*, *Peel v. Attorney Registration and Disciplinary Comm'n*, 496 U.S. 91 (1990); *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466 (1988); *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985); *In re RMJ*, 455 U.S. 191 (1982).

**The ABA and virtually all states reform their rules to eliminate**
**most advertising restrictions, including the prohibition on law-firm trade names.**

26.   In part as a response to *Bates* and subsequent Supreme Court decisions, the ABA in 1983 adopted a completely redrafted set of rules, the Model Rules of Professional Conduct. The Model Rules eliminated many lawyer-advertising restrictions that were unrelated to protecting consumers. *See* ABA Formal Op. 84-351 (1984). They disclaimed any intent to regulate advertising based on "[q]uestions of effectiveness and taste," focusing instead on Rule 7.1's

prohibition of "false or misleading communication about the lawyer or the lawyer's services." Model Rules of Prof'l Conduct Rs. 7.1, 7.2 cmt. 3.

27.   Model Rule 7.5 expressly stated that a "trade name may be used by a lawyer in private practice" as long as it "does not imply a connection with a government agency or with a public or charitable legal services organization" and the name "is not otherwise in violation of rule 7.1." *Model Rules of Prof'l Conduct* R. 7.5(a). A comment to Rule 7.5 explained that, under the new rule, a "firm may be designated … by a trade name such as the "ABC Legal Clinic," and that "use of such names in law practice is acceptable so long as it is not misleading." *Id.* R. 7.5 cmt. 1. The rule also provided that a "law firm with offices in more than one jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located." *Id.* R. 7.5(b).

28.   The Federal Trade Commission—the federal agency charged with protecting consumers from misleading advertising and restraints of trade—encouraged states to follow the ABA's lead, writing to state bars that prohibitions on law-firm trade names are "unnecessary and may deprive advertisers and consumers of the benefits of useful and informative trade names." Ltr. from FTC to N.J. Supreme Court 20 (Nov. 9, 1987), http://bit.ly/35mBdfi. "As long as a trade name is not inherently confusing or deceptive," the agency wrote, "it may be more effective than traditional firm names in reaching consumers in need of legal services." *Id.* Moreover, "banning trade or fictitious names, regardless of whether there has been any showing of deception, may deprive consumers of valuable information, increase consumer search costs, and lessen competition." Submission of FTC to ABA Comm'n on Advertising 15 (June 24, 1994), http://bit.ly/2SXhi3Z.

29.   In 2019, the ABA amended the Model Rules to abolish Rule 7.5 entirely. The ABA committee proposing the change noted that lawyers in the twenty-first century increasingly practice across state lines, and "[c]lients often need services in multiple jurisdictions." ABA Standing Committee on Ethics and Prof'l Responsibility, *Lawyer Advertising Rules for the 21st*

*Century* 1 (2019), http://bit.ly/2NqQp54. The committee wrote that state restrictions on trade names and other common advertising methods not only create First Amendment concerns, but also impede the efforts of lawyers to expand their services across state lines, "thwart clients' interests in securing the services they need," and "burden[] bar regulators with enforcing prohibitions on practices that are not truly harmful to the public." *Id.* at 1–2. The issues addressed by Model Rule 7.5's provisions on trade names, it concluded, were "better addressed" by Rule 7.1's prohibition on false and misleading advertising. *Id.* at 3.

### New York stands apart from other states in retaining a total prohibition on law-firm trade names.

30. Following the recommendations of the ABA and the FTC, almost every state has now adopted some version of the Model Rules and eliminated the Model Code's ban on law-firm trade names. Only four states—New York, Mississippi, Ohio, and Texas—still retain a blanket prohibition on the practice.

31. In 2003, the New York State Bar Association began to consider adoption of the ABA's Model Rules to replace the New York Code of Professional Responsibility. *See* N.Y. State Bar Ass'n, *Report and Recommendations of Task Force on Lawyer Advertising* 1 n.2 (Oct. 21, 2005). In the process, the state bar created a task force to recommend rules governing lawyer advertising. *Id.* at 1.

32. The seventeen-member advertising task force unanimously concluded that the state should not adopt new content-based restrictions on lawyer advertising. *Id.* at 2. Noting that about one-third of a sample of randomly selected New York lawyer advertisements would violate the state's existing prohibition on false and misleading advertising, the committee concluded that stricter reporting requirements and better enforcement, rather than more rules, were the proper ways to address any problems with advertising in the state. *Id.* at 2, 16, 53, 46, 47, 79-81.

33. Despite that conclusion, the task force endorsed a "continuation of the ban on use of trade names, … believing that trade names are far too likely to be false, deceptive and misleading to consumers of legal services." *Id.* It cited no evidence or reasoning backing up that belief.

34.   The state bar ultimately proposed, and the Appellate Division of the New York Supreme Court adopted, a version of the ABA's Model Rule 7.5 that contains the same trade-name prohibition as the former New York Code of Professional Responsibility.

### The Second Circuit strikes down a related New York restriction on law-firm trade names in New York's rules.

35.   The Appellate Division in 2007 adopted what the court described as "sweeping new restrictions on lawyer advertising" designed to "ensur[e] that the image of the legal profession is maintained at the highest possible level." New York State Unified Court System, *Significant Restrictions on Lawyer Advertising to Be Adopted in New York* (June 15, 2006). Among the new rules was a prohibition on advertisements that "utilize a nickname, moniker, motto or *trade name* that implies an ability to obtain results in a matter." 22 NYCRR § 1200.6(c)(7) (2007) (emphasis added).

36.   In response, the FTC warned that the proposed rules would "unnecessarily restrict truthful advertising and may adversely affect prices paid and services received by consumers." *See* Ltr. from FTC to Office of N.Y. Ct. Admin. (Sept. 14, 2006), http://bit.ly/2MXtqhp. The agency recommended against regulations that "are related to the style and content of media advertising but do not necessarily target deception," and noted that trade names that imply an ability to obtain future results "may benefit consumers so long as they are neither false nor misleading." *See id.* at 2-3 & 3.

37.   The Second Circuit ultimately held the new trade-name rule unconstitutional under the First Amendment, concluding that New York had "failed to provide evidence that consumers have, in fact, been misled by the sorts of names" that the rule targeted. *Alexander v. Cahill*, 598 F.3d 79, 95 (2d Cir. 2010). The court also held that the state exceeded its authority under the First Amendment by "wholly prohibit[ing] a category of advertising speech that is *potentially* misleading, but is not inherently or actually misleading in all cases." *Id.* at 96. New York could have addressed its purported concerns with less impact on protected speech, the court wrote, by instead mandating "disclaimers and other regulations short of content-based bans." *Id.*

**Absent an injunction, plaintiffs face the risk of disciplinary action
if they practice in New York or employ lawyers there.**

38.   LawHQ, LLC intends to begin practicing law in New York within the next few months by employing a lawyer admitted to practice there, in compliance with all requirements for operating a firm in the state. The firm is currently prohibited from doing so, however, by New York Rule of Professional Conduct 7.5(b).

39.   Rule 7.5(b) provides that a "lawyer in private practice shall not practice under a trade name" or "a firm name containing names other than those of one or more of the lawyers in the firm." N.Y. Rules of Prof'l Conduct R. 7.5(b). By its plain language, the "prohibition against trade names is broad, permitting use of little beyond the names of lawyers presently or previously associated with the firm." N.Y. State Bar Ass'n Ethics Op. 920 (2012). The state bar has concluded, for example, that a lawyer may not use a name that includes the lawyer's initials, an abbreviation of the lawyer's name, or the firm's areas of practice. *See* N.Y. State Bar Ass'n Ethics Ops. 740 (2001), 861 (2011), 869 (2011), 920 (2012), 948 (2012).

40.   "LawHQ, LLC" is a "trade name" that is not the name of "one or more lawyers in the firm." If the plaintiffs advertised in the state using that name, they would therefore violate Rule 7.5(b). *See* N.Y. State Bar Ass'n Ethics Op. 740 (2001) ("[U]sing a name that is not the legal name of one or more partners or former partners in the law firm constitutes use of a trade name.").

41.   Although LawHQ's trade name is permitted under the version of Rule 7.5(b) adopted in Utah, where the firm's main office is located, it would be subject to New York's version of the rule if it practices in the state. *See* N.Y. State Bar Ass'n Ethics Op. 861 (2011) (concluding that the New York office of an out-of-state firm could not use a trade name even if the firm name was permissible in the other state). Moreover, the rule would prohibit New York lawyers from associating with the firm as long as the firm operates under its trade name. N.Y. State Bar Ass'n Ethics Op. 1023 (2014) (concluding that a lawyer admitted in New York may not associate with an out-of-state firm that uses a trade name).

42.   The Appellate Division of the New York Supreme Court is responsible for enacting and enforcing professional discipline against lawyers in the state. Each department of the Appellate Division has its own lawyer grievance procedure and operates one or more lawyer disciplinary committees, with the authority to bring complaints against lawyers, to discipline lawyers in cases of minor misconduct by issuing letters of caution and admonition, and to recommend that the Appellate Division institute formal disciplinary proceedings.

43.   As chief disciplinary counsel for the departments of the Appellate Division, defendants are responsible for carrying out that enforcement. Collectively, they are charged with investigating alleged violations of the rules and either prosecuting or dismissing disciplinary charges against lawyers.

44.   Lawyers who are successfully prosecuted for violating the New York Rules of Professional Conduct are subject to discipline, including possible censure, suspension, or disbarment.

45.   On October 14, 2019, LawHQ sent letters to each defendant requesting assurance that the firm can "operate under its trade name in the state without threat of discipline" under Rule 7.5(b) "on the ground that the rule is contrary to the First Amendment." The defendants have thus far failed to provide the requested assurance.

46.   Absent an injunction preventing enforcement of Rule 7.5(b), the plaintiffs would risk discipline if they practiced in New York or employed lawyers there while using the name LawHQ, LLC.

### CLAIM FOR RELIEF
### VIOLATION OF THE FIRST AMENDMENT (UNDER 42 U.S.C. § 1983)

47.   The U.S. Supreme Court has recognized that "[t]he use of trade names ... is a form of commercial speech" protected by the First Amendment. *Friedman v. Rogers,* 440 U.S. 1, 11 (1979). To justify its restriction of commercial speech, a state has the burden of proving that the prohibited speech is false or misleading, or that the restriction "directly advances" some other important state interest. *Thompson*, 535 U.S. at 367. The state must show "not merely that its

regulation will advance its interest, but also that it will do so to a material degree." *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 505 (1996). And the state must also show that the restriction "is not more extensive than is necessary to serve that interest." *Id.*

48.   In adopting New York Rule of Professional Conduct 7.5(b), New York made no attempt to satisfy that burden. The rule is based not on evidence but on antiquated rules of professionalism that prohibited almost all lawyer advertising and that are now understood to violate the First Amendment.

**Law-firm trade names are not misleading.**

49.   The single stated basis for New York's prohibition of law-firm trade names is that they are misleading to consumers of legal services. In 1969, the drafters of the Model Code's trade-name restriction—which New York adopted essentially verbatim—justified the rule based only on their assertion that "[t]he use of a trade name or an assumed name could mislead laymen concerning the identity, responsibility, and status of those practicing thereunder." *Report of the Special Committee*, 94 ABA Rep. 729, 743 (1969) (EC 2-11). Likewise, the state bar's advertising task force defended its recommendation that the rule be retained solely on the ground that "trade names are far too likely to be false, deceptive and misleading to consumers of legal services." N.Y. State Bar Ass'n, *Report and Recommendations of Task Force on Lawyer Advertising* 65; *see also Matter of Von Wiegen*, 470 N.E.2d 838, 845 (1984) ("The purpose of the prohibition against trade names … is to prevent the public from being deceived about the identity, responsibility and status of those who use the name."); N.Y. State Bar Ass'n Ethics Op. 920 (2012) ("This rule serves to protect the public from being deceived as to the identity, responsibility or status of those who use the firm name.").

50.   But neither the Model Code's drafters nor the state-bar task force cited any evidence in support of its conclusion. There are no consumer complaints, disciplinary records, studies, or empirical research of any kind showing that even a single consumer has ever been misled by a law-firm trade name. That alone establishes the rule's unconstitutionality. *See Alexander v. Cahill*, 598 F.3d 79, 95 (2d Cir. 2010) ("Defendants have … failed to provide evidence that

consumers have, in fact, been misled by the sorts of names" targeted by the rule "and so have failed to meet their burden for sustaining this prohibition"). Mere invocation of the words "false, deceptive and misleading" is not enough to justify a restriction on commercial speech. *See id.* at 91.

51.   Nor does the explanation for the rule make logical sense. "Because a trade name has no intrinsic meaning, it cannot by itself be deceptive" and "will deceive only if it is used in a misleading context." *Friedman v. Rogers*, 440 U.S. 1, 24 (1979) (Blackmun, J., concurring and dissenting). For that reason, ordinary trade names—like Google or Coca-Cola—logically have no potential to mislead anyone.

52.   Law-firm trade names are no different. Firms like Summit Law Group in Washington and Archstone Law Group in Massachusetts have used trade names for years, and there is nothing misleading about them—just as there is nothing misleading about the name LawHQ, LLC. *See In re Comm. on Attorney Advert.*, 61 A.3d 930, 931 (N.J. 2013) (noting the "widespread acceptance of the use of trade names by law firms around the country").

53.   Over the past several decades, the ABA and the "vast majority of … states have adopted [ethics rules] to allow for the use of trade names by law firms," and none has "report[ed] any adverse impact to the public." *Id.* at 937. Only three states other than New York continue to impose a total prohibition on the practice. The remaining forty-six states "have perceived a benefit to allowing some use of trade names by law firms" and recognized that the practice "can be incorporated in the profession without harm to the public." *Id.* Moreover, doctors and other professionals routinely practice under trade names, without apparent negative consequences to the public or the professions.

54.   The FTC, the federal agency charged with protecting consumers from misleading advertising and restraints of trade, has also concluded that trade names "are not inherently misleading as to the identity of or services provided by a law firm." Ltr. from FTC to Supreme Ct. of Hawaii 2 (Mar. 30, 1987), http://bit.ly/2QK0n1W. The agency's rules against unfair and deceptive trade practices do not prohibit law firms from using trade names, and it has

consistently opposed efforts by state bars to adopt such restrictions. Based on the FTC's expertise in the area of consumer protection and its "long history of reviewing claims of deceptive advertising," its view is entitled to substantial weight. *Alexander*, 598 F.3d at 96.

55.   Even assuming that there were some justification for the ABA's original ban on law-firm trade names in 1937 (and there is no indication that such a justification existed), it has long since faded away. The ninety years since the adoption of Canon 33 have seen the proliferation of interstate law practices and business forms other than traditional law partnerships. Consumers over that time have also seen an explosion of advertising and have become accustomed to trade names being used for all manner of products and services. And the Supreme Court has since recognized that consumers are not so easily misled by stock advertising techniques, refusing to credit the "paternalistic assumption" that consumers of legal services "are no more discriminating than the audience for children's television." *Peel v. Attorney Registration and Disciplinary Comm'n*, 496 U.S. 91, 105 (1990).

### The trade-name prohibition is far more extensive than necessary to accomplish the state's claimed goal.

56.   New York's trade-name prohibition is also unconstitutional because it is far "more extensive than is necessary to serve" the state's claimed interest in preventing misleading advertising. *44 Liquormart,* 517 U.S. at 505.

57.   The stated basis for the rule is that law-firm trade names are "*likely* to be false, deceptive and misleading to consumers of legal services." N.Y. State Bar Ass'n, *Report and Recommendations* at 65 (emphasis added); *see also* Model Code EC 2-11 ("The use of a trade name or an assumed name *could* mislead laymen concerning the identity, responsibility, and status of those practicing thereunder." (emphasis added)). But even if some trade names are misleading, many others are inarguably harmless. The ABA's former Model Rule 7.5, for example, recognized "ABC Legal Clinic" as an acceptable trade name that is not inherently misleading to consumers. *Model Rules of Prof'l Conduct* R. 7.5 cmt. 1. Likewise, nothing about the name LawHQ, LLC is misleading or poses even a hypothetical threat to potential clients.

Because New York's trade-name ban nevertheless prohibits such trade names, it is unconstitutionally overbroad. *See Alexander*, 598 F.3d at 94–95 (holding former trade-name prohibition unconstitutional because it "prohibit[ed] such descriptors … even when they are not actually misleading"). New York cannot ban *all* firm trade names because *some* of them may be misleading.

58.   New York's rule is also overbroad because there are several alternative ways in which the state could achieve its interest in prohibiting misleading trade names without infringing protected speech. First, the state could prohibit misleading trade names by enforcing New York Rule of Professional Conduct 7.1(a), which prohibits lawyer advertisements that are "false, deceptive or misleading." *See* N.Y. State Bar Ass'n, *Report and Recommendations* at 65 (noting that about one-third of randomly selected New York lawyer advertisements would violate the rule against false and misleading advertising and recommending better enforcement). The state has successfully invoked that rule in the past against specific trade names that are misleading. *See, e.g.*, *Matter of Shephard*, 459 N.Y.S.2d 632, 633 (App. Div. 1983) (holding that the trade name "The People's Law Firm of Jan L. Shephard" was deceptive and misleading). The state could also enforce a separate provision of Rule 7.5(b)—not challenged here—that prohibits law firms from practicing "under … a name that is misleading as to the identity of the lawyer or lawyers practicing under such name." N.Y. Rules of Prof'l Conduct 7.1(b).

59.   If there are particular kinds of law firm names that are likely to be misleading, New York could specifically prohibit those. Rule 7.5(b) already prohibits a firm from using "[s]uch terms as 'legal clinic,' 'legal aid,' 'legal service office,' 'legal assistance office,' 'defender office' and the like" unless it is a "qualified legal assistance organization." And Rule 7.5(c) prohibits lawyers from "hold[ing] themselves out as having a partnership with one or more other lawyers unless they are in fact partners." Similarly, the ABA's Model Rule 7.1 provides that a "law firm name or designation is misleading if it implies a connection with a government agency, with a deceased lawyer who was not a former member of the firm, with a lawyer not associated with the

firm or a predecessor firm, with a nonlawyer or with a public or charitable legal services organization." *Model Rules of Prof'l Conduct* R. 7.1, cmt. 5.

60.    Alternatively, the state could protect consumers from genuinely misleading trade names by requiring disclaimers in appropriate cases, as the ABA's Model Rules do. *See id.* R. 7.1, cmt. 5 (noting that, in certain cases, "an express statement … may be required to avoid a misleading implication").

61.    The Second Circuit's decision in *Alexander* is dispositive on this issue. There, the court held New York's former prohibition on a "nickname, moniker, motto or trade name that implies an ability to obtain results" unconstitutional because the prohibited speech was only "potentially misleading [and] not inherently or actually misleading in all cases." *Alexander*, 598 F.3d at 96. The plaintiffs there did not challenge Rule 7.5(b)'s general prohibition on trade names, and the court therefore did not decide that rule's constitutionality. But if the state cannot impose a blanket prohibition on law-firm trade names that imply an ability to obtain results, it cannot impose an even broader prohibition on *all* law-firm trade names either.

**Rule 7.5(b) is poorly designed to protect consumers from being misled.**

62.    The requirements that restrictions on commercial speech "directly advance the governmental interest and be no more extensive than necessary to serve that interest" require a "fit between the [government's] ends and the means chosen to accomplish those ends." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 486 (1995). Here, the "overall irrationality" of New York's rule means that it cannot satisfy the test for restrictions on commercial speech. *Id.* at 488.

63.    If the rule's purpose were really to protect consumers from being misled, its allowance of firm names containing the names of deceased and retired partners makes no sense. Such a firm name is itself, "strictly speaking, a trade name." Ohio Rules of Prof'l Conduct 7.5 cmt. 1. And there is no reason to believe that such trade names are less likely than others to be misleading.

64.    On the contrary, the purported concern that trade names "could mislead laymen concerning the identity, responsibility, and status of those practicing thereunder" is, if anything, more implicated by the kind of trade names that the rule permits. The original canon that gave

rise to the trade-name ban prohibited law firms from using the "name of a person not authorized to practice where it is used," and as amended continued to provide that "care should be taken" to avoid misleading use of the names of partners not licensed in the jurisdiction, as well as the names of deceased and former partners. *Canons of Prof'l Ethics*, Canon 33 (1937). But New York's rule encourages firms to engage in exactly those practices while requiring them to give up meaningful and memorable trade names with no realistic possibility of misleading anyone. The rule thus fails to address the purported harms that gave rise to the rule.

### Rather than protecting consumers, the prohibition on trade names harms them by depriving them of useful information.

65.    Finally, the rule must be set aside because the state disregarded a key component of the constitutional calculus—an assessment of the impact that the trade-name ban is likely to have on consumers. The U.S. Supreme Court has long held that a state may not adopt a restriction on speech "without reference to whether it does so at inordinate costs." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). Rather, the costs must be "carefully calculated." *Id.*

66.    Commercial speech is critically important not only to speakers and recipients of speech, but to the functioning of a free-enterprise economy. *See Bates v. State Bar of Ariz.*, 433 U.S. 350, 364 (1977). That principle holds true for lawyer advertising as much as for advertising for other products and services. *See Zauderer*, 471 U.S. at 646–47. Indeed, lawyer advertising is "undoubtedly *more* valuable than other forms of advertising" because it can educate consumers about their rights, inform them when they may have a legal claim, and enhance their access to the legal system. *Zauderer*, 471 U.S. at 647-48 (emphasis added).

67.    As the FTC has explained, prohibitions on law-firm trade names "inhibit the communication of useful information to the public." Ltr. from FTC to Supreme Ct. of Hawaii at 2. Trade names "can convey useful information about the firm, including the location, fields of practice, and other characteristics of its practice." *Id.* A name like "Bankruptcy Law Center," for example, is more useful to a consumer than the surnames of lawyers the consumer has likely never heard of. *See id.* New York's rule deprives consumers of such useful trade names.

68.   Even trade names that do not include information about a firm's services can serve an important informational function because a they are "easier for consumers to distinguish and remember than [firm] names consisting only of [lawyers'] proper names." Ltr. from FTC to Supreme Ct. of Hawaii at 2. A memorable firm name is more "effective as a marketing tool" —a fact that benefits both lawyers and consumers of legal services. Submission of FTC to ABA Comm'n on Advertising 15 (June 24, 1994), http://bit.ly/2SXhi3Z.

69.   "Like any other trade name, a law firm name identifies the firm and comes to be associated with the services that the firm offers." FTC Ltr. to Supreme Ct. of Hawaii at 2. "Over time, trade names can come to be associated with a certain level of quality, service and price, thus aiding consumers' search and promoting competition." Submission of FTC to ABA Comm'n on Advertising at 15. A memorable trade name makes it easier for firms to develop those reputations and for consumers to share their experiences with others. In that way, "trade names help ensure that consumers will be informed about the relative merits of competing services," which "in turn creates an incentive for firms to develop and maintain the integrity of their services." *Id.*

70.   Conversely, prohibiting law firms from using memorable trade names reduces competition and "hinder[s] the growth and development of firms." *Id.* Existing firms that are already successful in the market have less need for short and memorable trade names because they can rely on existing name recognition and word of mouth. Firms that are new to the market, however, depend on advertising to reach potential clients and thus need "name[s] that will stand out from the crowd." *Simon's N.Y. Rules of Prof'l Conduct* § 7.5:21. Forcing newly established firms to rely entirely on the name recognition acts "as a barrier to professional entry" and "skews the market ... in favor of established attorneys who are already known by word of mouth." *Ficker v. Curran*, 119 F.3d 1150, 1153 (4th Cir. 1997); *see also Bates*, 433 U.S. at 377-78 (noting that advertising restrictions isolate lawyers from competition, thus reducing "the incentive to price competitively" and "perpetuat[ing] the market position of established attorneys").

71.   Prohibitions on trade names are especially harmful to firms, like LawHQ, that practice outside the state and have already developed clients and name recognition in other markets. Such a firm has to adopt a new name before practicing in the state, depriving it of its accumulated goodwill and potentially misleading consumers who no longer recognize it. The only alternative is to refrain from practicing in New York altogether, which itself hurts consumers by reducing competition in the legal market.

72.   The state "has not carefully calculated" those "costs … associated with the burden on speech imposed by its prohibition." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 (1993). For that independent reason, the rule is unconstitutional.

### REQUEST FOR RELIEF

73.   The plaintiffs request that the Court:

a.   Declare unconstitutional, both on their face and as applied to the trade name "LawHQ, LLC," the provisions of New York Rule of Professional Conduct 7.5(b) that prohibit lawyers and law firms from "practic[ing] under a trade name" or "a firm name containing names other than those of one or more of the lawyers in the firm";

b.   Enjoin enforcement of those provisions;

c.   Award the plaintiffs their reasonable costs, expenses, and attorney's fees under 42 U.S.C. § 1988; and

d.   Grant the plaintiffs all other appropriate relief.

22

January 23, 2019                              Respectfully submitted,

                                             *Rachel Schulman*

                                             Rachel Schulman
                                             N.Y. Bar No. 3940046
                                             Rachel Schulman, Esq. PLLC
                                             10 Bond Street, Suite 143
                                             Great Neck, NY 11021
                                             (917) 270-7132
                                             rachel@schulmanpllc.com

                                             Gregory A. Beck
                                             Pro hac vice motion to be filed
                                             D.C. Bar No. 494479
                                             1250 Connecticut Avenue NW
                                             Suite 700
                                             Washington, DC 20036
                                             (202) 684-6339
                                             greg@beck.legal

                                             Rebecca Evans
                                             Pro hac vice motion to be filed
                                             Utah Bar No. 16846
                                             General Counsel
                                             LawHQ, LLC
                                             299 S. Main St. Ste. 1300
                                             Salt Lake City, UT 84111
                                             (385) 233-6612
                                             rebecca@lawhq.com

                                             *Counsel for Plaintiffs*